UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : 07 Civ. 8594 (JGK) (MHD) |
| AGNES F. NOLAN, in her personal capacity, and AGNES F. NOLAN, as personal representative for the estate of RICHARD E. NOLAN, deceased, | : ECF CASE |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S MOTION TO EXTEND THE TIME FOR SERVICE *NUNC PRO TUNC*

                                                 MICHAEL J. GARCIA
                                               United States Attorney for the
                                               Southern District of New York
                                               Attorney for Plaintiff
                                               86 Chambers Street
                                               New York, New York 10007
                                               Telephone: (212) 637-2701
                                               Facsimile: (212) 637-2686

*Of Counsel:*
SERRIN TURNER
Assistant United States Attorney

-ii-

**TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................... 1

Statement of Facts ................................................................................................................ 1

Argument:   The Court Should Exercise Its Discretion under Rule 4(m) to
            Extend the Time for Service *Nunc Pro Tunc* ........................................................ 3

    A.   The Fact that Dismissal Would Cause One of the Government's
       Claims to Be Time-Barred Counsels in Favor of an Extension ............................. 4

    B.   Defendants' Receipt of the Complaint during the Service Period
       Counsels in Favor of an Extension ........................................................................ 5

    C.   Defendants' Intentional Failure to Waive Service Counsels in
       Favor of an Extension ............................................................................................ 6

    D.   The Lack of Prejudice to Defendants Counsels in Favor of
       an Extension ........................................................................................................... 7

Conclusion ........................................................................................................................... 10

**PRELIMINARY STATEMENT**

Defendants in this tax collection matter move to dismiss the complaint for failure to effect timely service. The Court should decline to do so. Under Federal Rule of Civil Procedure 4(m), the Court has broad discretion to extend the deadline for service as an alternative to dismissal. Such a discretionary extension is warranted here, based on several factors: (1) dismissal would effectively bar one of the Government's claims on timeliness grounds, to the detriment of the taxpaying public; (2) defendants received actual notice of the complaint soon after it was filed, making the Government's failure to effect service purely technical; (3) defendants intentionally ignored their duty to waive service in response to the Government's request; and (4) extending the time for service would work no significant prejudice on the defendants. Accordingly, the Court should deny defendants' motion and instead extend the time for service *nunc pro tunc* by 27 days to February 27, 2008, when service was formally effected on defendants.

**STATEMENT OF FACTS**

This action was brought to reduce to judgment 16 tax assessments made against defendants, Agnes and Richard Nolan, over a 26-year time period. As set forth in the complaint, the Nolans – both attorneys – repeatedly failed to pay their federal income and employment taxes for various tax periods ranging from 1979 to 2005. *See* Compl. ¶¶ 5-12. The total amount of taxes owed by defendants with respect to the assessments at issue is in excess of $7.7 million. *Id.* ¶¶ 13-15. Agnes Nolan currently resides in a Manhattan apartment at 271 Central Park West. *Id.* ¶ 5. Richard Nolan is now deceased, and Ms. Nolan is the executor of his estate. *Id.*

The complaint was filed on October 3, 2007. Declaration of Assistant United States Attorney Serrin Turner dated May 22, 2008 ("Turner Decl."), ¶ 2. The next day, the Government sent a copy of the complaint to Ms. Nolan's address via certified mail, along with a request for waiver of service; the certified mail receipt confirms that Ms. Nolan received the package on Oc-

tober 9, 2007. *Id.* ¶ 3 & Ex. A. The Government's request for waiver of service explained that defendants had a duty under Rule 4 of the Federal Rules of Civil Procedure to waive service in response to the request, in order to save unnecessary costs. *Id.* Ex. A, at 4. The request further advised that the costs of service would be avoided if the waiver was signed and returned to the U.S. Attorney's Office within 30 days, *i.e.*, by November 5, 2007. *Id.* Ex. A, at 1. Ms. Nolan never returned the waiver of service as requested. *Id.* ¶ 3.

However, undersigned counsel for the Government, due to a prolonged absence from the office and the press of other litigation upon his return, neglected to take note of Ms. Nolan's failure to waive service until more than 120 days after the filing of the complaint. *Id.* ¶ 4. Undersigned counsel was on extended paternity leave for almost all of November 2007 as well as the first week of December 2007. *Id.* Upon returning to the office in December, undersigned counsel faced a backlog of accumulated work and remained occupied with other litigation through January 2008. *Id.* As a result, by January 31, 2008 – the end of the 120-day service period prescribed by Federal Rule of Civil Procedure 4(m) – undersigned counsel had not realized that Ms. Nolan had failed to waive service and that formal service needed to be effected. *Id.*

On or about February 19, 2008, the Court scheduled an initial conference in the case for March 4, 2008, notifying counsel for the Government by telephone. *Id.* ¶ 5. Upon reviewing the case in anticipation of the conference, undersigned counsel immediately realized his oversight and, on February 21, 2008, directed a process server to effect formal service on Ms. Nolan. *Id.* ¶ 6 & Ex. B. Several days later, on February 26, 2008 – after several attempts to serve Ms. Nolan personally when she was not at home – the process server visited Ms. Nolan's apartment building at a time when Ms. Nolan was there. *Id.* ¶ 7. However, Ms. Nolan obstructed personal service, as she instructed the building doorman not to allow the process server up to her apartment. *Id.* ¶ 7 & Ex. C. The process server therefore effected service by leaving the complaint

with the doorman and mailing Ms. Nolan an additional copy the next day. *Id.* ¶ 8 & Ex. C; *see also Citadel Mgmt. v. Telesis Trust, Inc.* (S.D.N.Y. 2000) (Fed. R. Civ. P. 4(e)(1) satisfied by service on doorman plus mailing if diligent effort has been made to effect personal service).

Subsequently, defendants asked the Government to consent to extending their time to answer the complaint by approximately six weeks, *i.e.*, until April 30, 2008, which consent the Government provided. *Id.* ¶ 9. On April 29, 2008, defendants filed the instant motion.

### ARGUMENT

### THE COURT SHOULD EXERCISE ITS DISCRETION UNDER RULE 4(M) TO EXTEND THE TIME FOR SERVICE *NUNC PRO TUNC*

Rule 4(m) of the Federal Rules of Civil Procedure provides that, if a defendant is not served within 120 days after the complaint is filed, the court "must dismiss the action without prejudice against that defendant *or order that service be made within a specified time.*" Fed. R. Civ. P. 4(m) (emphasis). Courts are required to extend the time for service if good cause is shown for the failure to effect timely service, but courts also "have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *see, e.g.*, *Bunim v. City of New York*, 05 Civ. 1562 (KMK), 2006 WL 2056386, at *3 (S.D.N.Y. Jul. 21, 2006); *Zeballos v. Tan*, 06 Civ. 1268 (GEL), 2006 WL 1975995, at *6 (S.D.N.Y. Jul. 10, 2006). Although the Government does not contend that the "good cause" standard is met here, the Court can and should exercise its discretion to extend the time for service based on the circumstances of the case.

Courts have generally relied on four factors in deciding whether to grant a discretionary extension under Rule 4(m): "(1) whether the applicable statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the de-

fendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Micciche v. Kemper Nat'l Servs.*, 06 Civ. 5099 (DLI), 2008 WL 794977, at *5 (E.D.N.Y. Mar. 24, 2008) (internal quotation marks omitted); *accord, e.g.*, *Bunim*, 2006 WL 2056386, at *3; *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999). Here, all of these factors weigh in the Government's favor.

A.   **The Fact that Dismissal Would Cause One of the Government's Claims to Be Time-Barred Counsels in Favor of an Extension**

The first factor counseling in favor of an extension is the fact that dismissal of the complaint would effectively dismiss at least one of the Government's claims *with* prejudice, due to the running of the applicable statute of limitations. For most of the claims in the case, the applicable statute of limitations does not run until mid-2008 or much later. Turner Decl. ¶ 10.[1] However, the statute of limitations for one of the Government's claims – involving a 1990 income tax assessment – was due to expire the day after the complaint was filed. *Id.* A total of $231,668.24 is owed with respect to the claim as of the date of this submission. *Id.* The granting of defendants' motion would effectively result in the dismissal of this claim with prejudice.

"Courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." *AIG Managed Mkt. Neutral Fund v. Askin Cap. Mgmt.*, 197 F.R.D. 104, 109 (S.D.N.Y. 2000) (citing cases). Indeed, the advisory committee note to Rule 4(m) itself suggests that a discretionary extension may be granted based on this factor alone. *See* Fed. R. Civ. P. 4(m) (1993 amdt. advisory note) ("Relief

---

[1] As noted in the complaint, the statute-of-limitation periods for the assessments at issue have variously been extended due to bankruptcies filed by Agnes Nolan in 1991 and 1999, as well as offers in compromise and administrative collection proceedings that were pending at various times. *See* Compl. ¶ 11.

may be justified, for example, if the applicable statute of limitations would bar the refiled action."). "The rationale for this principle is that dismissal under these circumstances would extinguish potentially meritorious claims without there being an opportunity to have them adjudicated on the merits." *Bunim*, 2006 WL 2056386, at *3 (quoting *AIG*, 197 F.R.D. at 109-110); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (noting the Second Circuit's "oft-stated preference for resolving disputes on the merits"). While the Second Circuit's decision in *Zapata*, *supra*, holds that there is no "per se rule" requiring a district court to extend the service deadline based on this factor, 502 F.2d at 198, *Zapata* makes clear that a district court has broad discretion to do so, "as long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." 502 F.2d at 197.

Here, the dismissal sought by the defendants would have a particularly inequitable impact. Dismissal would not merely bar the pursuit of a private claim but would harm the *public* interest. The Government would be time-barred from seeking to restore approximately $231,000 in lost tax revenue to the public fisc. *See Brock v. Pierce County*, 476 U.S. 253, 262 (1986) ("[T]he protection of the public fisc is a matter that is of interest to every citizen."). Thus, the general preference for resolving disputes on the merits applies with special force here.

Nor is the harm to the public interest that would result from dismissal outweighed by any prejudice to the defendants that would result from an extension. As discussed below, *see infra* Point D, any such prejudice would be minimal, given that most of the Government's claims remain timely and defendants will have to defend against them in any event.

**B.   Defendants' Receipt of the Complaint during the Service Period Counsels in Favor of an Extension**

The second factor favoring an extension of the service deadline is the fact that defendants received actual notice of the complaint before the expiration of the 120-day service period. In-

deed, the complaint was sent to defendants via certified mail *one day* after the filing of the complaint, and was received shortly thereafter. The function of service was thus fulfilled, as actual notice was supplied "'in a manner and at a time that afford[ed] the defendant a fair opportunity to answer the complaint and present defenses and objections.'" *AIG*, 197 F.R.D. at 111 (quoting *Henderson v. United States*, 517 U.S. 654, 672 (1996)).

The Second Circuit has emphasized that Rule 4 "is to be construed liberally" where a defendant has received actual notice of the complaint. *Romandette v. Weetabix Co.,* 807 F.2d 309, 311 (2d Cir. 1986). Accordingly, courts routinely grant discretionary extensions under Rule 4(m) where defendants were given such notice. *See, e.g.*, *Morales v. N.Y.S. Dep't of Labor Div. of Employee Servs.*, 06 Civ. 899 (NAM), 2007 WL 2874570, at *5 (N.D.N.Y. Sep. 27, 2007) ("Defendant DOL had actual notice of Ms. Morales's complaint well within the 120 day service period, and therefore was not prejudiced by the failure to effect proper service."); *Zeballos*, 2006 WL 1975995, at *6 ("[D]efendant concedes that she received several copies of the summons and complaint at the apartment where she stays in Manhattan. . . . Given that the primary purpose of service requirements is to ensure actual notice, defendant's service objection is entirely without equitable appeal."); *Tishman v. Assoc. Press*, 05 Civ. 4278 (GEL), 2005 WL 3466022, at *2 (S.D.N.Y. Dec. 16, 2005) ("Here, the failure of service is technical, and no prejudice to the unserved defendants has been shown . . . . [They] manifestly received notice of the action and of the contents of the complaint."); *cf. Zapata*, 502 F.3d at 198-99 (upholding district court's denial of extension where defendant had no actual notice of the complaint until more than 120 days after the complaint was filed and almost three months after statute of limitations had run).

**C.    Defendants' Intentional Failure to Waive Service Counsels in Favor of an Extension**

As noted above, a third factor courts have considered in deciding whether to grant a discretionary extension is whether the defendant attempted to conceal a defect in service. This fac-

tor does not strictly apply in this case; but defendants' failure to waive service constitutes a significant, if lesser, form of culpable conduct that should be factored by analogy into the Court's balancing of the equities. *Cf. Blessinger v. United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997) (granting extension of time to serve individual agency employees even though they had not "actively evad[ed] service," given that agency "made no effort to assist in service" in response to plaintiff's request).

Defendants were specifically notified in the Government's request for waiver of service that "Rule 4 of the Federal Rules of Civil Procedure *requires* [a defendant located in the United States] to cooperate in saving unnecessary costs of service of the summons and complaint." Turner Decl., Ex. A, at 4 (emphasis added); *see* Fed. R. Civ. P. 4(d) (stating that an individual defendant subject to service within a district of the United States "has a *duty* to avoid unnecessary costs of serving the summons" upon receiving a request to waive service) (emphasis added). Ms. Nolan, who is a lawyer, was perfectly capable of understanding this legal duty, but she nonetheless chose to ignore it by not responding to the Government's waiver request. Her later obstruction of personal service, when she refused to allow the Government's process server to come to her apartment door in order to personally deliver the complaint, further evidence an intent to frustrate the Government's efforts.

Had Ms. Nolan complied with her duty to waive service, formal service would never have been necessary in the first place. In contrast to the mere oversight of Government counsel, defendants' withholding of cooperation was willful, and weighs in favor of an extension.

**D.    The Lack of Prejudice to Defendants Counsels in Favor of an Extension**

Finally, defendants would suffer no significant prejudice from an extension of the service deadline. Again, defendants were put on notice of the complaint shortly after its filing, and thus the Government's delay in effecting formal service has had no practical impact on their ability to

-7-

defend the case.  *Cf. Gowan v. Teamsters Union (237)*, 170 F.R.D. 356, 360 (S.D.N.Y. 1997) (finding that lengthy delay in effecting service prejudiced defendant, given that witness was potentially unavailable and evidence probably destroyed during the interim); *Shaw v. Rolex Watch U.S.A. Inc.*, 745 F. Supp. 982, 988 (S.D.N.Y. 1990) (noting that named defendant died during interim, though not ruling as to prejudice).

Moreover, plaintiffs cannot complain of prejudice stemming from the burden of defending this action.  This is not a case where dismissal would effectively shield the defendants from suit entirely.  *Cf. Zapata*, 502 F.3d at 197 (district court denied extension in part based on prejudice to defendant from having to defend against action otherwise entirely time-barred as against him).  Even if the Government's complaint is dismissed, most of the Government's claims can simply be re-asserted in a new complaint given that the applicable statutes of limitations have yet to run.  Extending the service deadline will preserve all of the Government's claims, but the additional litigation burden on defendants would be minimal in the context of the action as a whole. Defendants will in any event have to litigate over many tax periods spanning a 26-year range; whether a particular tax period is included or excluded is of scant significance.  *See Bunim*, 2006 WL 2056386, at *3 (finding no significant prejudice where dismissal would have effectively barred plaintiffs' state-law claims but not their federal-law claims: "[Defendants] will have to defend against the same allegations that relate to both the state and federal causes of action.  For example, the discovery demands will be the same as they have always been . . . .  Thus, this factor weighs in Plaintiffs' favor . . . .").

At most, the only prejudice defendants can claim from an extension of the service period is the additional liability they would face from the preservation of all of the Government's claims.  This is not enough to alter the balance of equities.  If this fact *alone* were regarded as necessitating dismissal, then Rule 4(m)'s service deadline could never be extended on a discre-

-8-

tionary basis in order to prevent a claim from being time-barred. Yet, as discussed above, the Advisory Committee notes to Rule 4(m) specifically contemplate the granting of a discretionary extension for this reason. In line with this guidance, district courts have generally regarded a defendant's inability to escape liability on timeliness grounds as an insubstantial form of prejudice. *See Bunim*, 2006 WL 2056386, at *4 ("The fact that service of process will occur after the statute of limitations has expired, thereby requiring the City to defend the state law claims, does not by itself constitute prejudice."); *AIG*, 197 F.R.D. at 111 ("If [defendant] is purporting to assert that not permitting it to take advantage of an expired statute of limitation is itself a form of prejudice, that contention is erroneous.").

It is true, as noted above, that the Second Circuit in *Zapata* declined to endorse a *per se* rule against dismissal where a plaintiff's claim would be time-barred as a result. 502 F.2d at 198. But it by no means adopted a *per se* rule requiring dismissal in such circumstances either; rather, the district courts retain broad discretion to weigh the equities as they see fit. *Id.* at 197-98. Given the circumstances here – where dismissal would harm not just a private interest but the public fisc, where defendants were provided actual notice of the complaint immediately after it was filed, where defendants intentionally shirked their duty to waive service, and where the delay in effecting formal service has not disadvantaged defendants in their ability to defend against the Government's claims – this Court can and should extend the service deadline rather than dismiss the case. The mere fact that an extension will prevent defendants from marginally reducing their litigation exposure, based on a pure technicality, does not come close to outweighing all of the equities in the Government's favor. *Cf. United States v. McLaughlin,* 470 F.3d 698, 701 (7th Cir. 2006) (Posner, J.) (finding no abuse of discretion in district court's granting of *nunc pro tunc* extension where defendant-taxpayer had actual notice of the Government's complaint and dismissal would have rendered the Government's claims time-barred: "[D]ismissal would

-9-

have presented [defendant] with a windfall – and a big one. It would have amounted to fining the government $3 million for doing something that did no harm to anyone and handing over the proceeds of the fine to a wrongdoer.").[2]

## CONCLUSION

For the reasons above, the Court should deny defendants' motion to dismiss and extend the service deadline *nunc pro tunc* until February 27, 2008.

Dated: New York, New York  
       May 22, 2008

MICHAEL J. GARCIA  
United States Attorney for the  
Southern District of New York  
Attorney for Plaintiff

By:    */s/ Serrin Turner*  
SERRIN TURNER  
Assistant United States Attorney

---

[2] The only other reason defendants proffer against a discretionary extension is their contention that the Government lacks a "colorable" or "cognizable" excuse for its delay in effecting service. *See* Defs.' Mem. at 5-6 (citing *Zapata*, 502 F.3d at 199, and *Hertzner v. USPS*, 05 Civ. 2371 (DRH), 2007 WL 869585, at *8 n.5 (E.D.N.Y. Mar. 20, 2007). The Government has presented such an excuse, however: due to a busy docket, made busier due to a prolonged office absence, undersigned counsel failed to realize that defendants had not complied with the Government's request to waive service. While the Government does not contend that this excuse rises to the level of "good cause," the absence of "good cause" alone obviously does not provide a sufficient reason for denying a *discretionary* extension under Rule 4(m), which by definition is granted in the absence of good cause. *See AIG*, 197 F.R.D. at 110 ("[T]o the extent that DLJ relies on the fact that the AIG Plaintiffs had 'no reasonable excuse,' DLJ merely reiterates its argument as to why an extension is not required based on good cause. That, however, is a different question.").

Moreover, the cases cited by defendants – *Zapata* and *Hertzner* – involved more than mere oversight on the part of plaintiff's counsel. In both cases, the plaintiffs failed to effect service despite being put on *affirmative notice* – well in advance of the end of the service period – that service had not been properly made. *See Zapata*, 502 F.3d at 194, 199; *Hertzner*, 2007 WL 869585, at *7. Here, by contrast, counsel for the Government never received such affirmative notice from defendants. Rather, counsel for the Government realized his oversight only after being contacted by the Court about scheduling an initial conference; and counsel immediately effected service on defendants thereafter. To be sure, undersigned counsel should have kept better track of the case and noted defendants' refusal to waive service before the expiration of the 120-day period; but this is not a case where plaintiff's failure to effect service is simply inexplicable.