UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | 07 Civ. 8594 (JGK) (MHD) |
| v. | : | ECF Case |
| AGNES F. NOLAN, in her personal capacity, and AGNES F. NOLAN, as personal representative for the estate of RICHARD E. NOLAN, deceased, | : : : | |
| Defendants. | : : | |

-------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXTEND TIME FOR SERVICE**

Barbara T. Kaplan (BK-9276)
David Bunning (DB-6401)
Greenberg Traurig, LLP
200 Park Avenue, 38th Floor
New York, New York 10166
(212) 801-9200
Attorneys for Defendants.

*NY 238,810,528v1 6/4/2008*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | 07 Civ. 8594 (JGK) (MHD) |
| v. | : | ECF Case |
| AGNES F. NOLAN, in her personal capacity, and AGNES F. NOLAN, as personal representative for the estate of RICHARD E. NOLAN, deceased, | : | |
| Defendants. | : | |

------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXTEND TIME FOR SERVICE**

Defendants, through their counsel, respectfully submit the following memorandum of law in reply to plaintiff's opposition to defendant's motion to dismiss and in opposition to plaintiff's motion to extend time. Defendants were served more than 120 days after commencement of the action and there is no good cause or cognizable excuse for this delay.

**STATEMENT OF FACTS**

This action to reduce federal tax assessments to judgment was commenced by the filing of the complaint on October 3, 2007. Prior to the filing of the complaint herein, Ms. Nolan, on behalf of herself and the estate of her late husband, submitted numerous offers in compromise to the Internal Revenue Service ("IRS") in an attempt to resolve all

of the outstanding tax liabilities at issue herein. The fifth, and most recent, offer in compromise was submitted on or about August 24, 2007. That offer in compromise required a non-refundable payment of 20% of the amount offered. Ms. Nolan took out a mortgage on her residence and planned to use the proceeds of the loan to fund the offer. The IRS was well aware of this because it was required to, and did, subordinate its federal tax lien to the mortgage. (Declaration of Agnes Nolan, filed and served herewith, at ¶¶ 4-6.)

Because of difficulties in getting an exact number for the offer until all the financial material was assembled, which took some time, an amount greatly in excess of the required 20% was sent to the IRS. A total of $465,760.60 was submitted, which was $115,007.60 more than the $350,751 required as the 20% down payment. After submission of the offer, the IRS acknowledged that $115,007.60 was a deposit in excess of the required 20% down payment of $350,751. On September 4, 2007, the IRS asked that an amended offer be made on an updated form and requested additional information within 30 days, *i.e.*, by October 4, 2008. (Nolan Decl., ¶ 7.)

Ms. Nolan was in the process of complying with these requests when, by letter dated September 21, 2007, the IRS, without warning and contrary to its prior actions, suddenly rejected that offer in compromise saying it had been submitted "solely to hinder [its] collection efforts." (Nolan Decl., ¶ 8.) The IRS kept the entire $465,756.60. A mere 12 days later, on October 3, 2007, the United States filed the complaint herein. According to the United States, this was one day before the collection statute ran on the 1990 federal income tax liability.

Ms. Nolan never refused service of process. Contrary to the sworn statement of AUSA Turner, and the Affidavit of Service of process server Harry Torres attached thereto, Ms. Nolan was not at home when the process server spoke to the concierge in her building. At the time of the alleged service --1:38 p.m. on February 26, 2008 -- Ms. Nolan had just finished a physical therapy session at the Hospital for Special Surgery at 535 East 70th Street, in New York. When she returned home, she found the summons and complaint with her mail. (Nolan Decl., ¶¶ 9-11, and Exhibit A thereto.)

## ARGUMENT

### I.

### THE ACTION SHOULD BE DISMISSED

Having elected to play hardball with the defendants, the United States then dropped the ball in this case, waiting 26 days past the 120-day period mandated by Federal Rule of Civil Procedure 4(m) to even begin to attempt serving defendants. It admits that there is no good cause to extend the time for service, and offers no adequate reason why the action should not be dismissed. "…[T]he plaintiff who fails to demonstrate good cause for his delay throws himself on the mercy of the district court." *United States v. McLaughlin*, 470 F.3d 698, 700 (7th Cir. 2006).

The United States explains that the service was late because the Assistant U.S. Attorney to whom the case was assigned was busy with other things and apparently forgot about the case until the court set it for a status conference in February, 2008, more than 120 days after the complaint was filed. There is no explanation as to why someone

3

else in the U.S. Attorney's Office or the Department of Justice could not have attended to this case and the ministerial acts of monitoring deadlines and effecting service.

The United States cites four factors which it maintains all counsel in favor of extending its time for service. While courts have considered three of these factors, they have also considered the factor, of whether the plaintiff made any attempt at service within the 120-day period. Where, as here, no such attempt has been made, this is a significant factor in favor of dismissal. For example, in *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007), the Court upheld the dismissal of the action, noting that plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay." Similarly, dismissal was upheld in *Hertzner v. U.S. Postal Service*, No. 05-CV-2371 (DRH)(ARL), 2007 U.S. Dist. Lexis 19691, 2007 WL 869585 (E.D.N.Y. 2007) where no attempt was made to serve the U.S. Attorney for the Eastern District of New York and the Attorney General within the 120-day period, although plaintiff had mistakenly served the Post Master General within that time. The court's opinion contains language equally applicable here:

> . . . there is no competent evidence that counsel attempted to effect service on the proper parties before the expiration of *Rule 4(m)*'s 120-day deadline. This is in contrast to those cases relied upon by Plaintiff wherein courts granted discretionary extensions. Furthermore, upon his return from vacation, Plaintiff's counsel still had a week within which to effect service. The fact that counsel was actively engaged in litigation of other cases does not excuse him from inquiring as to the status of service in the instant case. (Certainly, this was a task that could have been delegated to a staff member.)

2007 U.S. Dist. Lexis at p. 6

These cases must be contrasted with a case such as *Zeballos v. Tan*, 06 Civ. 1268 (GEL), 2006 U.S. Dist Lexis 46366, 2006 WL 1975995 (S.D.N.Y. 2006) in which a *pro se* plaintiff served a foreign domiciliary who made occasional visits by leaving copies with her doorman within the 120-day period, but neglected to mail copies to the defendant within that time. Further, despite the lack of service, defendant filed a counterclaim against the plaintiff.

In considering the factors, "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Zapata*, 502 F.3d at 198.

Analysis of the four factors cited by the United States, in conjunction with the considerations mentioned above, and other factors considered by the courts, does not suggest that the time for service should be extended.

The first factor is whether the statute of limitations will run on the plaintiff's action. Here, the United States asserts that the statute on one tax year ran the day after the complaint was filed, which amounts to $231,668.24 out of the approximately $7.7 million alleged to be due herein, and from this argues that it will prejudiced if it cannot proceed on this cause of action. The fact that the statute of limitations has run is a factor noted in the Advisory Committee Report to Rule 4(m),[1] but, as conceded by the United States, there is no "per se" rule that requires a District Court to extend the service deadline based on this factor. Government's Memorandum at p.5, citing *Zapata, supra*, 502 F.3d at 198. This case presents a very different set of facts than most of those cited by plaintiff, *see, e.g., AIG Managed Market Neutral Fund v. Askin Capital Management*,

---

[1] The Note provides, "Relief <u>may</u> be justified, for example, if the applicable statute of limitations <u>would bar the refiled action</u>." (Emphasis added.) Thus, it is just one discretionary factor even where the entire action would be barred.

*L.P.,* 197 F.R.D. 104 (S.D.N.Y. 2000),[2] because there is not a single cause of action, but instead there are multiple causes of action; the limitations period ran on only one of them, reflecting approximately 3% of the total liability asserted to be due. *Cf. U.S. v. McLaughlin,* 470 F.3d 698 (7th Cir., 2006) (involving a single tax claim of approximately $3 million); *Bunim v. City of New York,* Nos. 05-CV-1562 (KMK) etc., 2006 U.S. Dist. Lexis 50309, 2006 WL 2056386 (S.D.N.Y. 2006) (plaintiffs' counsel agreed to dismissal of state law claims against individually named defendants, none of whom had been served). This is not a reason to deny defendants' motion.

Moveover, the fact the United States is a litigant and that this is a tax case does not change this result, and plaintiff cites no authority to support this proposition. Its concern about the public fisc in this case is belied by (1) its failure to consider a good faith offer to compromise the tax liability after requiring defendant to take out a mortgage to tender the required 20% down payment, (2) its waiting until the day before one of the statutes ran to file the complaint, and (3) its waiting more than 120 days to attempt service because it had more important things to attend to. The United States chose to commence this suit,[3] and it is bound by the rules as is any other litigant.

Second, defendants' receipt of a copy of the complaint with a request to waive service is not a reason to deny the motion to dismiss. This is not a case where there was a "technical" failure of service, as the United States infers, attempting to contrast this case

---

[2] *AIG* is also distinguishable because although plaintiff's counsel neglected to serve defendant after the request for waiver of service was not acknowledged, it was one of six consolidated cases, and the defendant had answered interrogatories identifying itself as a party to the action.
[3] The collection statutes on all liabilities were suspended while the offer in compromise was pending and for 30 days thereafter. 26 U.S.C. §6331(k). Thus, it was the decision to reject the offer in compromise and commence suit which ceased the suspension of the 10-year collection statute of 26 U.S.C. §6502.

6

with *Zapata*. Indeed, this case is the equivalent of *Zapata*, where the plaintiff made no attempt to serve the individual defendant within the service period.

Further, the argument that the United States seeks to make here, that receipt of a copy of the complaint with the waiver is somehow the equivalent of service, was rejected in *Hertzner*. There, as noted above, the attorney failed to serve the U.S. Attorney's Office and the Attorney General within 120 days, but did serve the Post Master General within that time. The Court held that because the U.S. Attorney (but not the Attorney General) was provided with notice at that time, this factor was non-determinative. The Court did not address why the U.S. Attorney's Office could not have provided it to the Attorney General's Office, but in any event the fact that the U.S. Postal Service and the U.S. Attorney's Office had a copy of the complaint within the 120-day period was not found to be especially persuasive, and the action was dismissed.

The United States ignores the third factor cited by courts: whether defendants attempted to conceal a defect in service. There was no such attempt here, and this weighs in defendants' favor. *Hertzner, supra*. Instead, the United States substitutes its own third factor, that defendants did not waive service.

This factor is irrelevant. The duty to avoid the unnecessary cost of serving a summons does not turn a request to waive service into service. *AIG*, 197 F.R.D. 104, 108. The "penalty" for failure to discharge this duty is payment of service costs, Fed. R. Civ. P. 4(d)(2)(A) and (B), not extending the time for service.

Further, defendants did not evade service. Ms. Nolan was not home when the process server arrived on February 26 at 1:38 p.m. She had just finished a physical therapy session at the Hospital for Special Surgery at that time. Nor is there any evidence

7

of any prior attempt to effect service; the affidavit of the process server does not mention it and Mr. Turner has no personal knowledge. Indeed, one wonders why the process server did not simply leave the summons and complaint with her concierge to begin with, since this is valid service.[4]

The United States knew where Ms. Nolan lived; she had the same address she had had during the many years she dealt with the IRS on these same tax liabilities. It chose not to serve her within the 120 days, and it must accept sole responsibility for that state of affairs; plaintiff's attempt to argue that defendants sought to evade service of process is baseless at best and severely undercuts its credibility and the equities in this matter. This is a factor in defendants' favor.

The final factor is prejudice to the defendants. This is not a significant factor where there is no attempt at service within the 120-day period. Lack of prejudice to the defendant "will not suffice [as a ground to overlook late service] if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable." *United States v. McLaughlin*, 470 F.3d 698, 700-701. Defendants will be prejudiced if the motion to dismiss is not granted. The complaint seeks to reduce to judgment fifteen discrete tax liabilities. Five of these have since been paid: personal income tax for 1995, 1997, 2004, and 2005, and the trust fund recovery penalty for the first quarter of 1985. This leaves eleven separate liabilities: personal income tax for 1979, 1980, 1981, 1982, 1987, 1988, 1989, 1990, and the trust fund recovery penalty for withholding taxes for the fourth quarter of 1986, the third quarter of 1988, and the first quarter of 1990.

---

[4] Rule 4(e)(1) permits an individual to be served by the rules of the state in which the U.S. District Court sits. New York's CPLR section 308(2) permits service within the state by delivering the summons to a person of suitable age and discretion at the dwelling place or usual place of abode of the person to be served, and mailing the summons. *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000), cited by plaintiff.

Defendants submit that they will be prejudiced to the extent they are required to defend against a time-barred claim.

Finally, the attempt by the United States to contrast this case with *Hertzner* and *Zapata*, by stating that in this case it never received an "affirmative notice" from defendants that it had not effected service, is nonsensical. (Government's Memo. at p. 10, note 7.) In those cases, some attempt at service of process was made within the 120-day period. In *Hertzner*, the U.S. Postal Service has been served but the U.S. Attorney and the Attorney General had not; in *Zapata*, the City of New York had been served, but the individual defendant had not. This case is a more egregious case than either *Hertzner* or *Zapata*, because there was no attempt at service within the 120-day period. Defendants could not have provided "affirmative notice" to the United States of a defect in service where there was no attempt at service at all.

## CONCLUSION

For these reasons, defendants respectfully request that the action be dismissed and that plaintiff's motion to extend be denied.

Respectfully submitted,

Barbara T. Kaplan (BK-9276)
David Bunning (DB-6401)
Greenberg Traurig, LLP
200 Park Avenue, 38th Floor
New York, New York 10166
(212) 801-9200
Attorneys for Defendants